IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SUSAN PAITSEL, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civil Action No. 21-610-RGA |
| | : |
| KILOLO KIJAKAZI, Acting | : |
| Commissioner of Social Security, | : |
| | : |
| Defendant. | : |

**MEMORANDUM OPINION**

---

Susan Paitsel, Frederica, Delaware; Pro Se Plaintiff.

Brian O'Donnell, Regional Chief Counsel, and Robert Drum, Assistant Regional Counsel, Social Security Administration, Philadelphia, Pennsylvania; David C. Weiss, United States Attorney for the District of Delaware, and Heather Benderson, Special Assistant United States Attorney, Wilmington, Delaware.

August 23, 2022
Wilmington, Delaware

**ANDREWS, U.S. District Judge:**

Plaintiff, Susan Marie Paitsel, who appears *pro se*, appeals the decision of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, denying her application for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. Jurisdiction exists pursuant to 42 U.S.C. § 405(g). Presently pending before the Court are cross-motions for summary judgment filed by Paitsel and the Commissioner. (D.I. 12, 18). Briefing is complete.

## I.   BACKGROUND

Paitsel protectively applied for benefits on December 28, 2017, and March 1, 2018, respectively, alleging disability since January 22, 2014. (D.I. 8 at 192-198, 247).[1] The claims were denied initially on August 27, 2018, and upon reconsideration on December 24, 2018, and Plaintiff requested a hearing. (*Id.* at 84-139).

The Administrative Law Judge conducted the hearing on February 18, 2020, and heard testimony from Paitsel, who was represented by counsel, and vocational expert Christina L. Beatty-Cody. (*Id.* at 46-83) The ALJ found that Paitsel met the insured status requirements of the Act through September 30, 2019, and had not engaged in substantial gainful activity since January 22, 2014, her alleged onset date. (*Id.* at 24-25). He also found that Paitsel had chronic pain syndrome; lumbar degenerative disc disease; bipolar disorder; depression; post-traumatic stress disorder; obsessive-

---

[1] Reference to the pages in the transcript is to the pagination in the header, not the numbering at the bottom of the page.

compulsive disorder; and anxiety, which were severe impairments, but that did not meet or equal the severity requirements of the Listing of Impairments.   (*Id.* at 25-27).

The ALJ found that Paitsel:

- could perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except she could not be exposed to hazards (defined as climbing ropes, ladders, or scaffolds, using dangerous moving machinery, or being exposed to unprotected heights); could frequently balance, stoop, kneel, and crouch; occasionally climb ramps and stairs, and crawl; and occasionally be exposed to vibration, extreme heat, extreme cold. wetness, humidity, fumes, odors, dust, gases, and poor ventilation.
- was limited to simple, routine, and repetitive work, but not at a production pace, and that she could have no more than incidental and infrequent contact with the general public.
- could occasionally interact with coworkers and supervisors, but could not perform tasks that would require her to work in tandem with coworkers to complete job responsibilities, and could make simple work decisions in a stable work environment (defined as very little change in the work setting or work processes).
- was unable to perform her past relevant work.

(*Id.* at 31).   In response to the ALJ's hypothetical question whether an individual of Paitsel's age, education, and work background and the above-described limitations could perform work at the light level, the VE testified that the worker would be capable of performing representative unskilled light occupations, including routing clerk, router, and tabber, representing tens of thousands of jobs in the national economy.   (*Id.* at 31, 79-80).   The ALJ's decision became the final decision of the Commissioner upon the Appeals Council's denial of Paitsel's request for review.   (*Id.* at 5-7, 189-191).

Paitsel filed this civil action, *pro se*, seeking judicial review of the Commissioner's decision.   She seeks summary judgment on the grounds that the VE's testimony supports a finding of disability and her impairments meet the requirements of the Listing of Impairments.   (D.I. 12, D.I. 14 at 3).   The Commissioner seeks summary judgment

2

and argues that substantial evidence supports the ALJ's decision that Paitsel is not disabled. (D.I. 18 at 24).

## II. LEGAL STANDARDS

The Court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." See 42 U.S.C. §§ 405(g), 1383(c)(3); see also Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986). "Substantial evidence" means less than a preponderance of the evidence but more than a mere scintilla of evidence. See Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005). As the Supreme Court has noted, substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988).

In determining whether substantial evidence supports the Commissioner's findings, the Court may not undertake a de novo review of the Commissioner's decision and may not re-weigh the evidence of record. See Monsour, 806 F.2d at 1190-91. The Court's review is limited to the evidence that was presented to the ALJ. See Matthews v. Apfel, 239 F.3d 589, 593-95 (3d Cir. 2001). Evidence that was not submitted to the ALJ can be considered, however, by the Appeals Council or the District Court as a basis for remanding the matter to the Commissioner for further proceedings, pursuant to the sixth sentence of 42 U.S.C. § 405(g). See Matthews, 239 F.3d at 592. "Credibility determinations are the province of the ALJ and only should be disturbed on review if not supported by substantial evidence." Gonzalez v. Astrue, 537 F. Supp. 2d 644, 657 (D. Del. 2008) (internal quotation marks omitted).

The Third Circuit has made clear that a "single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence, particularly certain types of evidence (*e.g.*, that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). Thus, the inquiry is not whether the Court would have made the same determination but, rather, whether the Commissioner's conclusion was reasonable. *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Even if the reviewing Court would have decided the case differently, it must give deference to the ALJ and affirm the Commissioner's decision if it is supported by substantial evidence. *See Monsour*, 806 F.2d at 1190-91.

## III.   DISABILITY DETERMINATION PROCESS

A "disability" is defined for purposes of disability insurance benefits and supplemental security income as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003).

4

In determining whether a person is disabled, the Commissioner is required to perform a five-step sequential analysis. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); Hess v. Commissioner of Soc. Sec., 931 F.3d 198, 201 (3d Cir. 2019). If a finding of disability or nondisability can be made at any point in the sequential process, the Commissioner will not review the claim further. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step one, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i) (mandating finding of nondisability when claimant is engaged in substantial gainful activity); *Hess*, 931 F.3d at 201. If the claimant is not engaged in substantial gainful activity, step two requires the Commissioner to determine whether the claimant is suffering from a severe impairment or a combination of impairments that is severe. *Id.* If the claimant's impairments are severe, the Commissioner, at step three, compares the claimant's impairments to a list of impairments (20 C.F.R § 404.1520, Subpart P, Appendix 1) that are presumed severe enough to preclude any gainful work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014). When a claimant's impairment or its equivalent matches an impairment in the listing, the claimant is presumed disabled. *Id.* If a claimant's impairment, either singly or in combination, fails to meet or medically equal any listing, the analysis continues to steps four and five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e); *Hess*, 931 F.3d at 201.

At step four, the Commissioner determines whether the claimant retains the residual functional capacity ("RFC") to perform his or her past relevant work. *See* 20

5

C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv) (stating that claimant is not disabled if claimant is able to return to past relevant work); *Zirnsak*, 777 F.3d at 611. A claimant's RFC "is the most [a claimant] can still do despite [their] limitations." 20 C.F.R. § 404.1545(a)(1); 416.945(a)(1); *Hess*, 931 F.3d at 202 (quoting 20 C.F.R. § 404.1545(a)(1)). "[T]he claimant always bears the burden of establishing (1) that she is severely impaired, and (2) either that the severe impairment meets or equals a listed impairment, or that it prevents her from performing her past work." *Zirnsak*, 777 F.3d at 611 (quoting *Wallace v. Secretary of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983). If the claimant cannot perform her past relevant work, the ALJ moves on to step five. *Hess*, 931 F.3d at 202.

At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering [her] "[RFC,] . . . age, education, and work experience[.]" 20 C.F.R. §§ 404.1520(a)(4)(v) and (g), 20 C.F.R. § 416.920(a)(4)(v) and (g); *Hess*, 931 F.3d at 202. That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). If the claimant can make an adjustment to other work, she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If she cannot, she is disabled.

At this last step, ". . . the Commissioner bears the burden of establishing the existence of other available work that the claimant is capable of performing." *Zirnsak*, 777 F.3d at 612 (citing *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987)). In other words, the Commissioner ". . . is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant]

6

can do, given [her] residual functional capacity and vocational factors." 20 C.F.R. §§ 404.1560(c)(2); 416.960.(c)(2) . "'Ultimately, entitlement to benefits is dependent upon finding the claimant is incapable of performing work in the national economy.'" *Zirnsak*, 777 F.3d 612 (quoting *Provenzano v. Commissioner*, 2011 WL 3859917, at *1 (D.N.J. Aug. 31, 2011)).

When mental impairments are at issue, additional inquiries are layered on top of the basic five-step disability analysis and an ALJ assesses mental impairments. 20 C.F.R. §§ 404.1520a(a), 416.920a(a); *Hess*, 931 F.3d at 202. As part of step two of the disability analysis, the ALJ decides whether the claimant has any "medically determinable mental impairment(s)." 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1); see also 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (providing that, at step two, the ALJ determines whether the claimant has "a severe medically determinable physical or mental impairment"); *Hess*, 931 F.3d at 202. "[A]s part of that same step and also step three of the disability analysis, the ALJ determines 'the degree of functional limitation resulting from the impairment(s)[.]'" *Hess*, 931 F.3d at 202 (quoting 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2) and citing 20 C.F.R. §§ 404.1520a(d), 416.920a(d), 404.1520(a)(4)(ii)-(iii), 416.920(a)(4)(ii)-(iii) (explaining that the ALJ uses "the degree of functional limitation" in assessing "the severity of [the claimant's] mental impairment(s)[,]" which is considered at steps two and three)).

In determining the degree of functional limitation, the ALJ considers "four broad functional areas . . .: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3); *Hess*, 931 F.3d at 202. The first three areas are

7

rated on a "five-point scale: None, mild, moderate, marked, and extreme." 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4); *Hess*, 931 F.3d at 202. The fourth is rated on a scale of: "None, one or two, three, four or more." *Id*.

"The ALJ uses that degree rating in 'determin[ing] the severity of [the] mental impairment(s)[,]' which is considered at steps two and three. *Hess*, 931 F.3d at 202 (quoting 20 C.F.R. §§ 404.1520a(d), 416.920a(d) and citing 20 C.F.R. §§ 404.1520(a)(4)(ii)-(iii), 416.920(a)(4)(ii)-(iii) (stating that, at steps two and three, the ALJ "consider[s] the medical severity of [the claimant's] impairment(s)"). "If . . . the degree of [the claimant's] limitation in the first three functional areas [is] 'none' or 'mild' and 'none' in the fourth area, [the ALJ] will generally conclude that [the claimant's] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [her] ability to do basic work activities." *Hess*, 931 F.3d at 202 (quoting 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1) (citation omitted)).

"At step three, if the ALJ has found that a mental impairment is severe, he 'then determine[s] if it meets or is equivalent in severity to a listed mental disorder.'" *Hess*, 931 F.3d at 202 (quoting 20 C.F.R. §§ 404.1520a(d)(2), 416.920a(d)(2) and citing 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) (explaining that, at step three, the ALJ determines whether the claimant has "an impairment(s) that meets or equals" a listed impairment). "That analysis is done 'by comparing the medical findings about [the claimant's] impairment(s) and the rating of the degree of functional limitation to the criteria of the appropriate listed mental disorder.'" *Hess*, 931 F.3d at 203 (quoting 20 C.F.R. §§ 404.1520a(d)(2), 416.920a(d)(2)). As explained by the Third Circuit, "the claimant may have the equivalent of a listed impairment if, *inter alia*, he has at least two

8

of '1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration[.]'" *Hess*, 931 F.3d at 203 (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1).

"[T]o complete steps four and five of the disability analysis, if the ALJ has found that the claimant does not have a listed impairment or its equivalent, the ALJ 'will then assess [the claimant's mental RFC].'" *Hess*, 931 F.3d at 203 (quoting 20 C.F.R. §§ 404.1520a(d)(3), 416.920a(d)(3) and citing 20 C.F.R. §§ 404.1520(a)(4)(iv)-(v), 416.920(a)(4)(iv)-(v) (providing that, at steps four and five, the ALJ considers the claimant's RFC)).

## IV.   DISCUSSION

Paitsel filed her Complaint *pro se*, and therefore, the Court must liberally construe her pleadings, and "apply the applicable law, irrespective of whether she has mentioned it by name." *Holley v. Department of Veteran Affairs*, 165 F.3d 244, 247-48 (3d Cir. 1999); *see also Leventry v. Astrue*, 2009 WL 3045675 (W.D. Pa. Sept. 22, 2009) (applying same in the context of a social security appeal).[2]

---

[2] I note Paitsel's argument that there is something wrong with the transcript of the testimony at the hearing. (D.I. 19 at 5-6). I read the entire transcript (D.I. 8 at 48-83) and it appears to be a typical transcript where there is "talking over" from time to time. Thus, when Paitsel complains about the transcript showing a question being answered with "five to ten pounds," the answer makes perfect sense if the two preceding questions and answers are also considered. (*Id.* at 69-70). As for "put on an Adderall," it seems apparent that that is a transcription error, not an omission. Whatever Paitsel actually said there, it is irrelevant to the disability issues.

The ALJ found Paitsel had the following severe impairments: chronic pain syndrome; lumbar degenerative disc disease; bipolar disorder; depression; post-traumatic stress disorder; obsessive-compulsive disorder; and anxiety. (D.I. 8 at 25). He also determined that her rheumatoid arthritis and blurry vision/vision disorder were not medically determinable impairments due to a lack of objective evidence. (*Id.*).

Paitsel argues that the ALJ erred when he did not consider the VE's responses of "that would preclude all work" when responding to questions posed by her attorney. She argues that all the scenarios posed by her attorney's hypotheticals "are exactly her limitations." (D.I. 14 at 4). To support her position Paitsel relies upon an October 3, 2018 health assessment form and a February 3, 2020 mental impairment questionnaire, both completed by Dr. Louis Papa, her treating psychiatrist. (D.I. 8 at 490-497, 558-563). Conversely, the Commissioner contends that the ALJ properly relied upon the testimony of the VE that jobs existed in significant numbers in the national economy that Plaintiff can perform.

The ALJ posed the following hypothetical question to the VE:

[I]f you consider a hypothetical individual of the claimant's age, education, and the past work that you just indicated.[3] However, assume that this individual would be limited to a range of light work. They cannot be exposed to hazards defined as climbing ropes, ladders, using dangerous moving machinery or being exposed to unprotect heights. The individual could frequently balance, stoop, kneel, and crouch, and can occasionally climb ramps and stairs or crawl. This individual can occasionally be exposed to vibration, extreme heat, extreme cold, wetness, humidity, fumes, odors, dust, gases, and poor ventilation. This individual would be limited to simple, routine, and repetitive work, but not at a production pace. This individual could have no more than incidental and infrequent contact

---

[3] Paitsel's past work included general clerk, report clerk, claims clerk and data entry clerk. (*Id.* at 78).

10

with the general public, can occasionally interact with coworkers and supervisors, but cannot perform tasks that would require them to work in tandem with coworkers in order to complete job responsibilities. This individual would be able to make simple work decisions in a stable work environment defined as very little change in work setting or work process. Would an individual with these limitations be able to perform any of the claimant's past relevant work, either as she performed it or as it's generally performed?

(D.I. 8 at 79). The VE responded the hypothetical person could not. (*Id.*). The ALJ then asked if there was other work at the light level of exertion that someone with these limitations could perform. (*Id.*). The VE responded, "yes," at the light level of exertion, and she provided a sampling of positions such as routing clerk, router, and tabber; positions that exist in large numbers in the national economy. (*Id.* at 79-80).

Paitsel's counsel then posed multiple questions to the VE and asked what the impact would be on the ability to sustain employment with an individual who: (1) would be off task twenty percent of the time during an eight-hour workday; (2) was not able to respond appropriately to changes in a routine work setting; (3) would twenty-five percent of the day have difficulties getting along with coworkers or peers without distracting them or exhibiting behavioral strain; (4) forty percent of the day was unable to accept instructions and respond appropriately to criticisms from their supervisors; and (5) was going to be absent more than four days per month due to their health problems. (*Id.* at 81-82). In each instance, the VE answered the limitation would "preclude work". (*Id.*).

In his decision, the ALJ found that Paitsel:

(1) has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except she cannot be exposed to hazards, defined as climbing ropes, ladders, or scaffolds, using dangerous moving machinery, or being exposed to unprotected heights.

11

> She can frequently balance, stoop, kneel, and crouch; occasionally climb ramps and stairs, and crawl; and occasionally be exposed to vibration, extreme heat, extreme cold, wetness, humidity, fumes, odors, dust, gases, and poor ventilation.
>
> (2) is limited to simple, routine, and repetitive work, but not at a production pace, and that she can have no more than incidental and infrequent contact with the general public.
>
> (3) can occasionally interact with coworkers and supervisors, but cannot not perform tasks that would require her to work in tandem with coworkers to complete job responsibilities, and she can make simple work decisions in a stable work environment, defined as very little change in the work setting or work processes.
>
> (4) is unable to perform any past relevant work, as actually or generally performed, and that considering Paitsel's age, education, work experience, and residual functional capacity, there are jobs that exist in in significant numbers that she can perform such as routing clerk, router, and tabber.

(*Id.* at 31, 37).[4]

Paitsel seems to argue that the ALJ's residual functional capacity assessment is flawed because his hypothetical did not consider all of the impairments and symptoms that caused her inability to sustain work. "A hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987). An ALJ does not have to include every alleged impairment, but only "a claimant's credibly established limitations." *Rutherford*, 399 F.3d at 554. "Limitations that are medically supported but are also

---

[4] In Paitsel's Reply Brief, she suggests that her recent analysis of job postings is inconsistent with the ALJ's finding. (D.I. 19 at 7-8). Paitsel cannot attack the finding about the number and types of jobs that exist that she can do by providing the results of recent internet searches.

contradicted by other evidence in the record may or may not be found credible-the ALJ can choose to credit portions of the existing evidence but cannot reject evidence for no reason or for the wrong reason." *Id.* (internal quotation marks omitted).

The ALJ found the opinion of Dr. Papa not persuasive as "overly extreme" and not supported by the overall medical evidence or consistent with the record as a whole that demonstrates Paitsel has moderate limitations. (D.I. 8 at 36). The ALJ found that "the degree of limitation expressed by Dr. Papa [*i.e.*, marked] is not consistent with the treatment records or his own mental status exams of the claimant, which indicated anxiety and irritability, but little other abnormalities on exam." (*Id.* at 36, citing *id.* at 558-563, 584-612).

The ALJ is only required to include limitations found in the residual functional capacity assessment in the hypothetical question. *See Izzo v. Commissioner of Soc. Sec.*, 186 F. App'x 280, 287 (3d Cir. 2006) (finding that the ALJ did not err in failing to include in his hypothetical questions to the vocational expert "specific reference[s] to [the claimant's] functional loss, mental limitations, and subjective complaints of pain and fatigue," where the ALJ had already discredited those alleged impairments, excluding them from his RFC determination); *Russo v. Commissioner of Soc. Sec.*, 2014 WL 6991987, at *11 (D.N.J. Dec. 10, 2014) (where "an ALJ has appropriately rejected a limitation, that limitation need not be conveyed to the vocational expert."). In addition, "where a limitation is supported by medical evidence but is opposed by other evidence in the record, the ALJ has the discretion to choose whether to include the limitation in the hypothetical." *Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014).

13

Here, the ALJ found the opinions of Dr. Papa not persuasive. (D.I. 8 at 36). Thus, the evidence the ALJ analyzed did not support the limitations posed to the VE during examination by Paitsel's attorney. As a consequence, the answers to those questions relied upon an infirm foundation. Therefore, the ALJ was not required to accept the VE's testimony that no work was available that Paitsel could perform.

Paitsel also argues the ALJ erred in finding that her impairments do not meet or equal the requirements of the listing of impairments for musculoskeletal, respiratory, and mental impairments. She believes she meets the criteria of Appendix 1 to subpart P of Part 404 – Listing of Impairments - Musculoskeletal System (1.00 and 101.00); Respiratory Disorders (3.00 and 103.00); Mental Disorders (12.00 and 112.00); and/or Part A 1.00 Musculoskeletal System (3.00), Respiratory Disorders (12.00) and Mental Disorder. (D.I. 14 at 4). Paitsel does not explain why she believes she meets the listing requirements or why the ALJ erred in his finding.

At step three, the ALJ is required to determine whether any of a claimant's impairments, alone or in combination with other impairments, meet or are medically equivalent to one of the impairments enumerated in the List of Impairments. While Paitsel believes she meets the requirements for listing of impairments for the musculoskeletal system, respiratory disorders, and mental disorder, she does not provide an explanation of how she meets or equals all the requirements of any Listing. Instead, Paitsel states in a conclusory manner that she believes she meets the listing requirements. *See also Sullivan v. Zebley*, 493 U.S. 521, 530 ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria."). Paitsel cannot meet the criteria of a listing based upon her belief. 20 C.F.R. §§

14

404.1525(d); 416.925(d) ("[I]mpairment(s) cannot meet the criteria of a listing based only on a diagnosis. To meet the requirements of a listing, [plaintiff] must have a medically determinable impairment(s) that satisfies all of the criteria of the listing.").

Here, the ALJ thoroughly and correctly evaluated all of Paitsel's physical and mental impairments and found that she does not have an impairment or a combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d) and 416.926. (D.I. 8 at 26-27). The ALJ justifiably relied upon Paitsel's medical records in finding that her rheumatoid arthritis and blurry vision/vision disorder were not medically determinable impairments due to a lack of objective evidence. (*Id.* at 25-26). He considered all of Paitsel's physical impairments individually and in combination, and found that the record did not establish the medical signs, symptoms, laboratory findings or degree of functional limitation required to meet or equal the criteria of any listed impairment. (*Id.* at 27). As noted, the ALJ thoroughly reviewed Paitsel's records and provided ample reasoning in finding she did not meet the listing requires for musculoskeletal system (*i.e.*, 1.00) and for disorders of the spine (*i.e.*, 1.04).

With respect to the mental listings, the ALJ found that Paitsel had moderate limitations in the four areas of mental functioning for Listings 12.03, 12.06, and 12.25. (*Id.* at 27-31). To satisfy the criteria of Paragraph B, a claimant's mental disorder must result in an "extreme" limitation of one or a "marked" limitation of two of the four areas of mental functioning. 20 CFR Part 404, Subpt. P, App'x 1 § 12.00. Paitsel did not meet the listing requirements. The ALJ also considered whether Paragraph C criteria were

satisfied and found that the evidence failed to establish the presence of Paragraph C criteria as there was no evidence Paitsel's mental disorder was "serious and persistent" and evidence of marginal adjustment (i.e., she had minimal capacity to adapt to changes in her environment or to demands that were not already part of her daily life). (*Id.* at 31).

Similar to the physical impairments, the ALJ provided a thorough analysis of Paitsel's mental impairments and the mental health records that indicate she responded and functioned well when on her medication, that she maintained mostly normal mental status examinations except for agitation and an anxious mood when in treatment, there was no change in mental status findings or prescribed medication even when under increased stress, and she had good relationships with her spouse and children. Finally, as discussed above, the ALJ did not find Dr. Papa's opinion persuasive as it was "overly extreme" and not supported by the overall medical evidence or consistent with the record as a whole. (*Id.* at 36).  The ALJ found persuasive the opinion of state agency psychologist Dianne Bingham, Ph.D. who reviewed the treatment evidence, the consultative physician's report and Paitsel's written statements and determined that Paitsel had no more than moderate limitations in her mental function, was stable when taking her medications regularly, and was capable of "simple routine work in a low social contact work environment."  (*Id.* at 36, 85-93).

The ALJ's conclusion that Paitsel does not have an extreme impairment in one of the foregoing categories or marked impairments in two of the foregoing categories is supported by substantial evidence of record. Thus, the Court cannot conclude that

Paitsel's impairments meet or medically equal the severity of any listed mental impairment.

The final responsibility for determining a claimant's residual functional capacity is reserved to the Commissioner. See *Breen v. Commissioner of Soc. Sec.*, 504 F. App'x 96 (3d Cir. 2012) (citing 20 C.F.R § 404.1546(c)). The substantial evidence of record supports the ALJ's decision. The ALJ thoroughly analyzed the medical evidence and considered the medical opinions in determining the effects of Paitsel's condition in relation to her ability to perform work. The ALJ appropriately relied upon the testimony of the VE. In addition, the record supports the ALJ's finding that found that Paitsel does not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d) and 416.926).

Accordingly, the Court finds that substantial evidence supports the ALJ's ruling and finding that Paitsel is not disabled.

## V.   CONCLUSION

For the reasons discussed above, the Court will: (1) deny Paitsel's motion for summary judgment; and (2) grant the Commissioner's cross-motion for summary judgment.

A separate order will be entered.